### UNITED STATES v. JACOBS.
#### No. 13 Cr. U.

United States District Court
E. D. Wisconsin.
June 25, 1953.

Timothy T. Cronin, U. S. Atty., Milwaukee, Wis., for plaintiff.

John J. Burke, Milwaukee, Wis., for defendant.

TEHAN, District Judge.

The defendant, Henry Jacobs, Jr., is charged by indictment with the crime of carnal knowledge and abuse upon a seventeen year old girl within the limits of the Menominee Indian Reservation, "in violation of Section 1153, Title 18, United States Code of Laws, in re: Section 340.47, Wisconsin Statutes, 1949."

The material part of 18 U.S.C.A. § 1153, commonly known as "The Ten Major Crimes Act", provides as follows:

"Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, rape, incest, assault with intent to kill, assault with a dangerous weapon, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

"As used in this section, the offense of rape shall be defined in accordance with the laws of the State in which the offense was committed, and any Indian who commits the offense of rape upon any female Indian within the Indian country, shall be imprisoned at the discretion of the court."

Sections 340.46 and 340.47 of the Wisconsin Statutes 1949 provide:

"340.46 Rape. Any person who shall ravish and carnally know any female

of the age of sixteen years or more, by force and against her will, shall be punished by imprisonment in the state prison not more than thirty years nor less than one year; but if the female shall be proven on the trial to have been, at the time of the offense, a common prostitute, he shall be so punished not more than seven years nor less than one year.

"340.47 Carnal knowledge and abuse. Any person over eighteen years of age who shall unlawfully and carnally know and abuse any female under the age of eighteen years shall be punished by imprisonment in the state prison not more than thirty-five years nor less than one year, or by a fine not exceeding two hundred dollars; * * *."

There is no allegation in the indictment that there was any force or that the offense was committed against the will of the victim, so as to bring the case within the scope of Section 340.46. However, the government contends that Section 340.47 defines the offense in question as rape, thereby subjecting the defendant to the penalties of the federal act. It is undisputed that both the defendant and the alleged victim are members of the Menominee Tribe of Indians, that the latter was seventeen years of age, and that the location where the alleged offense occurred is within the Indian country.

Defendant has moved for dismissal of the indictment on the grounds that (1) the indictment does not state facts sufficient to constitute an offense against the United States, and (2) the offense alleged in the indictment occurred in Indian country, and the defendant, an Indian, has been punished by the local law of the tribe of which he is a member.

It is the position of the defendant that Congress did not intend to include carnal knowledge and abuse, also known as "statutory rape", within the term "rape" as used in 18 U.S.C.A. § 1153. Defendant further contends that even if Congress did intend to include such offense within the term "rape" in instances where a state's definition of rape can be construed as including such offense, Wisconsin law defining "rape" may not be so construed as to include within its meaning the offense of carnal knowledge and abuse.

To understand the legislative intent regarding the Ten Major Crimes Act, it is necessary to examine its history. Basically, it must be understood that an Indian tribe is an independent self-governing political body. This principle was first clearly announced by Chief Justice Marshall in Worcester v. State of Georgia, 1832, 6 Pet. 515, 31 U.S. 515, 8 L.Ed. 483. It should further be understood that the policy of the United States, as reflected by congressional legislation and the administration of such legislation, provides that "the relations of the Indians among themselves—the conduct of one toward another—is to be controlled by the customs and laws of the tribe, save when Congress expressly or clearly directs otherwise". United States v. Quiver, 241 U.S. 602, 605, 36 S.Ct. 699, 700, 60 L.Ed. 1196. These self-governing powers, lawfully invested in an Indian tribe, are not powers which have been delegated by acts of Congress, but are inherent powers of tribal sovereignty which have never been extinguished. Cohen, Handbook of Federal Indian Law, p. 122.

So clear were these principles that in 1883 in the case of Ex parte Crow Dog, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030, the United States Supreme Court held that federal courts had no jurisdiction to prosecute an Indian for the murder of another Indian on an Indian reservation, such jurisdiction never having been withdrawn from the original sovereignty of the Indian tribe. This case aroused much consternation and prompted the enactment by Congress two years later of the Act of March 3, 1885, 23 Stat. 362, 385. That law, known then as "The Seven Major Crimes Act", made it a federal crime for an Indian to commit any one of seven named offenses against another Indian on an Indian reservation, the seven offenses being murder, manslaughter, rape, assault with intent to kill, arson, burglary, and larceny. In later years the offenses of assault with a dangerous weapon, Act of March 4, 1909, 35 Stat.

1088, 1151, robbery and incest, Act of June 28, 1932, 47 Stat. 337, were also added to the federal code of Indian crimes, so that there are now ten major offenses for which federal jurisdiction has displaced tribal jurisdiction.

In the 1932 amendment there was first enacted the provision that rape should be defined in accordance with the laws of the state where the offense was committed. In the general revision of the criminal code in 1948, Act of June 25, 1948, 62 Stat. 758, this section was amended so as to provide that rape should also be punished in accordance with the laws of the state where the offense was committed, but in 1949 a further amendment, Act of May 24, 1949, 63 Stat. 94, eliminated the latter provision concerning punishment.

With respect to the legislative history of the June 28, 1932 amendment, it appears that identical bills were introduced in the Senate (S. 4511) and House (H.R. 11595) at the request of the Department of the Interior (75 Cong.Rec. 9019 and 8916). These bills in pertinent part sought to amend the Major Crimes Act by adding "incest", "carnal knowledge", "assault with intent to rape", "assault with intent to do great bodily harm" and "robbery" to the eight offenses already listed. Both bills also contained a proviso that the offenses of rape and carnal knowledge should be defined in accordance with the laws of the state wherein the offense was committed.

The Senate Committee on Indian Affairs amended S. 4511 by striking out "carnal knowledge", "assault with intent to rape" and "assault with intent to do great bodily harm" from the enumerated crimes, and also by deleting "carnal knowledge" from the proviso. Thus, the net effect of the Senate bill, as amended, was to add to the statute the two additional crimes of robbery and incest, and to provide that rape should be defined in accordance with the laws of the state where the offense was committed. (75 Cong.Rec. 11481). It was this amended Senate bill which eventually was enacted into law as the Act of June 28, 1932, 47 Stat. 337.

S. 4511, as amended, passed the Senate on June 8, 1932; the companion bill, H.R. 11595, was reported by the House Committee on Indian Affairs on May 27, 1932 with certain amendments. Since the House substituted S. 4511 for the amended House Bill, no useful purpose would be served by a discussion of the amendments or proceedings involving them.

■ That rape and carnal knowledge and abuse constitute distinct and separate offenses has long been recognized.

"In England the statutory crime is not denominated 'rape', and the English judges have escaped the confusion of ideas which may arise from the fact that two essentially different crimes have been called by the same name. In some states the statutory offense is denominated 'rape'; generally, however, it is known as 'statutory rape', to distinguish it from the common-law offense of rape. The two crimes are essentially different." 44 Am.Jur. p. 912.

In the case of State v. Winger, 1938, 204 Minn. 164, 282 N.W. 819, 820, 119 A.L.R. 1202, the court quotes Wharton's Criminal Law, 12th Ed., Sec. 684, as follows:

"By statute the carnal abuse or knowledge of a female child under a specified age, with her consent, is made a statutory crime, which constitutes a new and distinct offense from the ordinary crime of rape. Some of the cases—they are a minority, and not supported by the better reason—hold that there is but one crime denounced. In those jurisdictions where the better rule prevails and the statute is held to create a distinct crime, on an indictment for rape the accused cannot be convicted of the statutory offense, and vice versa."

Applying this rule, the court in the Winger case held that an acquittal of rape, as charged under an indictment in which the age of the raped female is not averred, does not bar a later prosecution for the very same act of intercourse under an indictment charging carnal knowledge and abuse of a female child under the age of consent, the court considering that the defendant had not been in jeopardy as to the latter charge.

Recognition by the government that these constitute separate offenses is shown by the fact that the original bills, which were drafted by the Department of the Interior, denominate them as "crimes", and provide further that the "offenses" rape and carnal knowledge should be defined in accordance with state law.

[3] The action taken by Congress of deleting carnal knowledge, as well as assault with intent to rape and assault with intent to do great bodily harm, from the list of enumerated offenses indicates that Congress did not think carnal knowledge should be made an offense.

■ The government argues that it is conceivable that by leaving in the bill the proviso that rape should be defined in accordance with the laws of the states, Congress felt that they had covered the offense of carnal knowledge. The answer to such an argument is that it is not a proper basis for a criminal statute. It is not the province of the court in a criminal case to create an offense by construction. Criminal statutes must be strictly construed. United States v. Halseth, 342 U.S. 277, 72 S.Ct. 275, 96 L.Ed. 308; U. S. v. Wiltberger, 5 Wheat. 76, 5 L.Ed. 37.

■ It is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute, unless clearly within its terms. There can be no constructive offenses, and before a man can be punished, his case must be plainly and unmistakably within the statute. U. S. v. Weitzel, 246 U.S. 533, 543, 38 S.Ct. 381, 62 L.Ed. 872; U. S. v. Harris, 177 U.S. 305, 310, 20 S.Ct. 609, 44 L.Ed. 780; Todd v. U. S., 158 U.S. 278, 282, 15 S.Ct. 889, 39 L.Ed. 982.

■ The important thing to be determined, of course, is the intent of Congress. The language of the statute should not be distorted under the guise of construction, or limited by construction so as to defeat the manifest intent of Congress. United States v. Alpers, 338 U.S. 680, 70 S.Ct. 352, 94 L.Ed. 457. In this case, the manifest intent of Congress would seem to be indicated by the fact that Congress struck out carnal knowledge from the list of proposed offenses. If Congress wanted to constitute carnal knowledge as an offense, it does not seem likely that it would have been done in the round-about way for which the government contends, when it could easily have been accomplished by the simple and direct method of allowing the words "carnal knowledge" to remain as they were in the original bill.

It might be observed in passing that if the government's construction of the statute were to be accepted, taking the same set of facts that we have here, an Indian would be held to a greater degree of responsibility than a white man. In Williams v. U. S., 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962, the defendant, a white man, was prosecuted under the Assimilative Crimes Act, 18 U.S.C.A. § 468, for carnal knowledge and abuse of an Indian girl. As in the case now before the court, the Indian girl was seventeen years of age, and the offense occurred on an Indian reservation. The Arizona law, set forth in a footnote in the decision, fixed eighteen as the age of consent. The Federal Criminal Code, 18 U.S.C.A. § 458, in defining the crime of carnal knowledge, fixes sixteen as the age of consent. The court held that the offense known to Arizona as "statutory rape" had been defined and prohibited by the Federal Criminal Code, and that the offense as it is there defined is not to be redefined and enlarged by application to it of the Assimilative Crimes Act. Thus, the defendant is here charged with an offense for which a white man under the same circumstances could not be charged.

It is extremely unlikely that Congress intended such a discriminating result. In the case of Ex parte Crow Dog, 109 U.S. 556, 571, 3 S.Ct. 396, 406, 27 L.Ed. 1030, the court in referring to the matter there before it said:

"* * * It is a case where, against an express exception in the law itself, that law, by argument and inference only, is sought to be extended over aliens and strangers; over the members of a community, separated by race, by tradition, by the instincts of a free though savage life, from the

authority and power which seeks to impose upon them the restraints of an external and unknown code, and to subject them to the responsibilities of civil conduct, according to rules and penalties of which they could have no previous warning; which judges them by a standard made by others, and not for them, which takes no account of the conditions which should except them from its exactions, and makes no allowance for their inability to understand it. It tries them not by their peers, nor by the customs of their people, nor the law of their land, but by superiors of a different race, according to the law of a social state of which they have an imperfect conception, and which is opposed to the traditions of their history, to the habits of their lives, to the strongest prejudices of their savage nature; one which measures the red man's revenge by the maxims of the white man's morality. * * *"

In past years, the attitude of Congress toward offenses by one Indian against the person or property of another Indian, as expressed in its legislation, has reflected similar thinking, and as stated earlier the policy has been "that the relations of the Indians, among themselves—the conduct of one toward another—is to be controlled by the customs and laws of the tribe, save when Congress expressly or clearly directs otherwise". U. S. v. Quiver 241 U.S. 602, 605, 36 S.Ct. 699, 700, 60 L.Ed. 1196.

In Cohen, Handbook of Federal Indian Law, p. 125, it is stated:

"The force of the decision in Ex parte Crow Dog was not weakened, although the scope of the decision was limited, by subsequent legislation which withdrew from the rule of tribal sovereignty a list of 7 major crimes, only recently extended to 10. Over these specified crimes jurisdiction has been vested in the federal courts. Over all other crimes, including such serious crimes as kidnaping, attempted murder, receiving stolen goods, and forgery, jurisdiction resides not in the courts of nation or state but only in the Indian tribe itself."

Numerous other offenses of a serious nature are also mentioned as not being within the cases that can be prosecuted in federal courts. Cohen, Handbook of Federal Indian Law, p. 147. For example, assault with intent to commit rape is not punishable under any federal statute. U. S. v. King, D.C.E.D.Wis. 1897, 81 F. 625.

It may well be that the description of the Indian people set out in Ex parte Crow Dog is no longer warranted, and that the time has come to make Indians subject to more of the laws governing other citizens or residents of the United States. But this is a matter for the legislature and not the courts. It is for Congress to change a policy that has been long established and has been repeatedly recognized by the courts.

Even if Congress intended by this statute to cover the offense of carnal knowledge in those instances where it is included in a state's definition of rape, there is serious doubt whether the Wisconsin definition of rape can be construed to include the offense of carnal knowledge. In support of its position that the Wisconsin definition of rape can be so construed, the government cites the cases of Fizell v. State, 25 Wis. 364, and Loose v. State, 120 Wis. 115, 97 N.W. 526.

In these cases the Wisconsin court was construing a statute dealing with assault with intent to commit the crime of rape, Section 41, Chapter 164, R.S., now Section 340.48 of the Wisconsin Statutes. In each case the court held that Section 41 embraced an assault to commit either one of the offenses described in Sections 39 and 40, immediately preceding Section 41. Sections 39 and 40, as amended, have now become Sections 340.46 and 340.47, set out earlier in this opinion.

In 1870 when the Fizell case was decided, the offenses described in Sections 39 and 40 were ravishing a female of the age of ten or more by force and against her will, and knowing and abusing any female child under the age of ten. In 1903 at the

time of the Loose case, the two offenses, then Sections 4381 and 4382, Stats.1898, were defined as ravishing a female of the age of fourteen or more by force and against her will, and knowing and abusing any female under the age of fourteen. Until the year 1939 the first offense was denominated as "Rape" in the statutes, the second as "Same", and the third as "Assault intending to rape". As heretofore indicated, the Wisconsin court held in the Fizell and Loose cases that for the purposes of the section dealing with assault with intent to rape, both of the preceding sections constituted rape. It should be remembered, however, that in 1870 at the time of the Fizell decision, the statute provided punishment for carnal knowledge and abuse of a female under the age of ten years, and under the common law, carnal knowledge with a female who had not arrived at the age of puberty was rape. The Wisconsin court in the Fizell case was merely following that accepted doctrine. 75 C. J. S., Rape, § 1, page 462.

In 1939, however, the titles to Sections 340.47 and 340.48 were amended by the state legislature. Chapter 77, Section 1, Wis.Laws, 1939. The title of Section 340.47 was amended to read "Carnal knowledge and abuse", and the title of Section 340.48 was amended to read "Assault intending to rape *or* carnal knowledge and abuse." (Emphasis added.) In addition, the substantive provisions of Section 340.-48, which merely included "assault * * with intent to * * * rape" up to that time, were amended to cover "assault with intent to commit the crime of rape *or* of carnal knowledge and abuse". (Emphasis added.) Thus, even if the government is correct in its position that the Fizell and Loose decisions indicate that carnal knowledge and abuse was synonomous with rape in Wisconsin at the time those decisions were rendered, this was changed by the legislature in 1939.

■ It is our conclusion that the Wisconsin legislature by the passage of the

1939 amendments intended to recognize "carnal knowledge and abuse" as a distinct offense, separate and apart from the offense of rape.

■ In further support of his motion to dismiss, defendant refers to 18 U.S.C.A. § 1152 which provides as follows:

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

"This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively."

Defendant relies upon that part of Section 1152 which provides that such section shall not extend to "any Indian committing any offense in the Indian country who has been punished by the local law of the tribe". Counsel for the defendant states, although it has not been made a part of the record, that the defendant, a married man, was tried and convicted of adultery by the Tribal Court and was sentenced for a period of thirty days, that he served seventeen days of this sentence and the balance was suspended. He contends that the defendant has already been punished by the local law of the Menominee Tribe for the same offense with which he is here charged, and that under the exception contained in Section 1152 the indictment must be dismissed. We find no merit in this argument.

Counsel for the defendant will prepare an order in conformity with this opinion.