Arnold Francis **KILLS CROW**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 71–1127.

United States Court of Appeals,
Eighth Circuit.

Nov. 10, 1971.

Rehearing Denied Dec. 2, 1971.

Stephenson, Circuit Judge, dissented and filed opinion.

**324**

R. Murray Ogborn, Aberdeen, S. D., for appellant.

Richard D. Hurd, Asst. U. S. Atty., William F. Clayton, U. S. Atty., Sioux Falls, S. D., for appellee.

Before MATTHES, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

MATTHES, Chief Judge.

The Major Crimes Act, 18 U.S.C. § 1153,[1] creates federal jurisdiction over enumerated offenses when committed by Indians on Indian reservations. Appellant, an Indian, was charged under the act with having assaulted his wife, on a South Dakota reservation, with intent to do great bodily injury by stabbing her with a knife. A jury found him guilty, and he has appealed from the judgment of conviction.

Several errors are alleged on appeal, the most significant being the district court's refusal to instruct the jury on the lesser offense of simple assault. Evidence adduced at trial tended to place in controversy the question of whether appellant had possessed the intent to inflict great bodily injury requisite for conviction of the charged greater offense.[2] The evidence established clearly that appellant was rather drunk at the time of the assault, having been drinking rubbing alcohol and wine for several hours prior thereto. Further, appellant claimed to have discovered his wife and brother engaged in sexual intercourse immediately prior to the attack. Finally, appellant testified that at the time of the assault he had not intended to injure his wife.

Claimed as error also was the admission into evidence of a knife, allegedly used in the assault and found on appellant's person shortly thereafter. Objection to the knife's admissibility is premised largely upon some weakness in the testimony as to whether a knife actually was the instrument of the assault and upon the failure of government investigators to conduct tests for blood traces and fingerprints on the weapon.

---

1. The statute provides in pertinent part:
 Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to kill, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses within the exclusive jurisdiction of the United States.
 \* \* \* \* \*

2. Section 1153 provides that assault resulting in serious bodily injury "shall be defined \* \* \* in accordance with the laws of the State in which such offense was committed." Assault with intent to do great bodily harm is defined in S.Dak. Comp.Laws 1967, § 22-18-12. Simple assault is defined in S.Dak.Comp.Laws 1967, § 22-18-1.

Other alleged errors include denial of a motion for acquittal based upon insufficiency of the evidence to support the conviction, a purportedly prejudicial response by the court to a jury inquiry, and the admission into evidence of a signed statement and waiver of rights.

 We consider first whether the trial court erred in refusing to instruct the jury on the lesser offense of simple assault. This question turns upon a determination of whether section 1153 is sufficiently broad in scope to have vested in the district court jurisdiction to consider, and thus to instruct upon, the lesser offense.

We agree with the district court that the instruction could not properly have been given in this case. The Major Crimes Act recognizes only aggravated assaults, and one looks in vain for another statute conferring jurisdiction upon federal courts to convict Indians of simple assault, at least where the offense is alleged to have been committed on a reservation.

We reject the contention that such jurisdiction arises by implication from section 1153. The Supreme Court ruled in Todd v. United States, 158 U.S. 278, 15 S.Ct. 889, 39 L.Ed. 982 (1895), that

[i]t is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute unless clearly within its terms. There can be no constructive offenses, and, before a man can be punished, his case must be plainly and unmistakably within the statute. 158 U.S., at 282, 15 S.Ct. at 890.

This court applied this principle of strict construction to section 1153 in United States v. Davis, 429 F.2d 552 (8th Cir. 1970), where we observed that an Indian charged with an aggravated assault could not be convicted in federal court of the lesser offense of simple assault. 429 F.2d, at 554.[3]

It is argued that such a construction of section 1153, by which Indians are denied an instruction available to white men, invests the statute with a racially discriminatory effect and renders it violative of the constitutional guarantee of equal protection. We turn now to a consideration of this argument.

 To be noted at the outset is that, although the Equal Protection Clause of the Fourteenth Amendment does not apply to the federal government, federal discrimination may be so gross as to be unconstitutional by virtue of the Fifth Amendment's due process guarantee. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Next, it hardly needs to be observed that section 1153 is founded upon a racial classification and, as illustrated here, may in some respects result in further racial distinctions. It is clear also that racial classifications are "constitutionally suspect," Hunter v. Erickson, 393 U.S. 385, 392, 89 S.Ct. 557, 21 L. Ed.2d 616 (1969), and subject to the "most rigid scrutiny." Korematsu v. United States, 323 U.S. 214, 216, 65 S. Ct. 193, 89 L.Ed. 194 (1944).

We recognize also, however, that racial classifications initially are only suspect, and are unconstitutional only if invidious or capricious. Whether a given classification is consistent with due process depends upon the context in

---

3. The United States Court of Appeals for the Ninth Circuit and three United States District Courts have held also that section 1153 cannot be extended to include offenses not enumerated. United States v. Rider, 282 F.2d 476 (9th Cir. 1960); United States v. Red Wolf, 172 F.Supp. 168 (D.Mont.1959); Petition of McCord, 151 F.Supp. 132, 17 Alaska 762 (D.Alas. 1957); United States v. Jacobs, 113 F.

Supp. 203 (E.D.Wis.1953), appeal dismissed, 346 U.S. 892, 74 S.Ct. 228, 98 L.Ed. 394 (1953). If appellant's theory were correct, the district courts would be required to instruct on lesser offenses not specifically within the terms of section 1153, thereby expanding federal jurisdiction by intendment contrarily to the firmly entrenched principle enunciated in Todd v. United States, *supra*.

which the classification is made, and history is relevant to this inquiry. Cohen v. Hurley, 366 U.S. 117, 129–130, 81 S.Ct. 954, 6 L.Ed.2d 156 (1961). We have examined the context in which the distinction here at issue arises, and we conclude that neither the racial classification underlying all of section 1153, nor the procedural effect of denying Indians instructions on lesser offenses, is unconstitutional.

■ The constitutionality of the underlying racial classification is apparent from the history of the relationship between the federal government and the Indians. That relationship from the beginning has been characterized as resembling that of guardian and ward. See, e. g., Board of Commissioners of Creek County, Okl. v. Seber, 318 U.S. 705, 718, 63 S.Ct. 920, 87 L.Ed. 1094 (1943); United States v. Kagama, 118 U.S. 375, 383–384, 6 S.Ct. 1109, 30 L.Ed. 228 (1886); Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831). The Supreme Court held in United States v. Thomas, 151 U.S. 577, 14 S.Ct. 426, 38 L.Ed. 276 (1894), that as an incident of its guardianship the United States

> have full authority to pass such laws * * * as may be necessary to give to these people full protection in their persons and property, and to punish all offenses committed against them or by them within [federally granted] reservations. 151 U.S., at 585, 14 S. Ct., at 429.[4]

■ The remaining question is whether Congress, having elected to afford federal recognition to certain Indian offenses, properly may decline to create federal jurisdiction over all Indian offenses. This question is colored by the likelihood that such selectiveness will result in racially tinged procedural distinctions such as the one here at issue. We conclude, however, that distinctions created through Congressional restraint in enacting Indian criminal legislation are neither invidious nor capricious and are, in fact, generally beneficial to Indians. This is so basically because Indian tribal courts have inherent jurisdiction over all internal criminal matters not taken over by the federal government. United States v. Quiver, 241 U.S. 602, 36 S.Ct. 699, 60 L.Ed. 1196 (1916); Iron Crow v. Oglala Sioux Tribe, 231 F.2d 89 (8th Cir. 1956). Several recent law review commentaries have discussed the centrality of tribal courts to the preservation of Indian identity and the proper and efficient administration of justice on the reservations.[5] Further, the Indian population itself has demonstrated its

---

4. The Court consistently has recognized that the wardship doctrine is subject to constitutional limitations, see, e. g., United States v. Klamath and Moadoc Tribes of Indians, 304 U.S. 119, 123, 58 S.Ct. 799, 82 L.Ed. 1219 (1938), and that wardship is not destined to be the perpetual status of the Indians. Williams v. Lee, 358 U.S. 217, 220–221, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); Matter of Heff, 197 U.S. 488, 499, 25 S.Ct. 506, 49 L. Ed. 848 (1905). But it is equally well settled that only Congress is empowered to determine the appropriate time for relinquishment of each vestige of federal control over the Indians. See, e. g., United States v. Ramsey, 271 U.S. 467, 469, 46 S.Ct. 559, 70 L.Ed. 1039 (1926); Lone Wolf v. Hitchcock, 187 U.S. 553, 565, 23 S.Ct. 216, 47 L.Ed. 299 (1903).

Significant limitations of and alternatives to wardship already have been provided. Thus criminal and civil jurisdiction over Indians living on reservations in several states has been given up by the federal government, and the laws of those states now apply generally to Indians as to all other state citizens. See, e. g., 18 U.S.C. § 1162; 28 U.S.C. § 1360. Further, any state not specifically granted jurisdiction over Indian country within its boundaries may assume such jurisdiction, subject to the approval of Indian tribes which would be affected. 25 U.S.C. § 1321 et seq. Finally, even in states neither granted nor having assumed jurisdiction over Indian country, it is apparent that Indians may of their own initiative leave federal reservations and undertake the burdens and privileges of state citizenship. 8 U.S.C. § 1401(a) (2); U.S. Const. amend. XIV, § 1.

5. Kerr, Constitutional Rights, Tribal Justice, and the American Indian, 18 J.Pub. L. 311, 330–32 (1969); Note, The In-

objection to interference with the tribal court system.[6] Finally, it is clear that Congress has been both mindful and solicitous of the importance to Indians of tribal government and courts. See, *e. g.,* 25 U.S.C. §§ 476, 477, 1301 et seq.

Given this perspective, it would be difficult indeed for us to ascribe to Congress an invidious motivation for its reluctance to assert federal jurisdiction over minor criminal offenses committed by Indians on reservations. Nor do we think that the particular discriminatory effect relied upon here overbalances the value of leaving with the tribal courts jurisdiction over such offenses. *Cf., United States ex rel. De Flumer v. Mancusi,* 443 F.2d 940 (2nd Cir. 1971).

■ We uphold also the admission into evidence of the knife allegedly used by appellant in the assault. Viewing the evidence most favorably to the prosecution, we find ample support for the government's contentions that the assault was committed with a knife and that the knife found in appellant's possession was that used in the assault.

The claim that the evidence was insufficient to sustain a conviction must be rejected. This contention is based primarily upon the element of intent, and there was substantial evidence from which the jury could and did find, under proper instructions, that appellant assaulted his wife with intent to do great bodily harm.

Other allegations of error have been considered. They are lacking in substance.

The judgment of the district court is affirmed.

STEPHENSON, Circuit Judge (dissenting).

· I would reverse because of the trial court's failure, on request of the defense, to give the jury a lesser offense instruction as to simple assault.

I

Fed.Rules Cr.Proc., Rule 31(c), 18 U.S.C.A., together with three decisions of the Supreme Court of the United States [1] embody the primary prescription for the giving of a lesser included offense charge. It perhaps is worthy of note that while the principle of Rule 31(c) is expressed in language that is permissive in nature, at least one appellate court has recognized and held that a lesser offense instruction is a matter of right, provided, of course, that the conditions set forth in the Rule and the controlling decided cases are fully satisfied.[2]

The income tax evasion case of Sansone v. United States, 380 U.S. 343, 349–350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965), affirming 334 F.2d 287, 294–295 (CA8 1964), contains an explication of the applicable standard. The Court stated:

"Thus, '[i]n a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifie[s] it * * * [is] entitled to an instruction which would permit a finding of guilt of the lesser offense.' * * * But a lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses.

dian: The Forgotten American, 81 Harv. L.Rev. 1818, 1836–87 (1968); Note, The Constitutional Rights of the American Tribal Indian, 51 Va.L.Rev. 121, 136–37 (1965).

6. Hearings on the Constitutional Rights of the American Indian Before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 87th Cong., 1st Sess., pt. 1, at 15–16 (1961).

1. Sansone v. United States, 380 U.S. 343, 349–350, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); Berra v. United States, 351 U.S. 131, 134, 76 S.Ct. 685, 100 L.Ed. 1013 (1956) and Stevenson v. United States, 162 U.S. 313, 322–323, 16 S.Ct. 839, 40 L.Ed. 980 (1896).

2. Government of Virgin Islands v. Carmona, 422 F.2d 95, 100 (CA 3 1970).

\* \* \* In other words, the lesser offense must be included within but not, on the facts of the case, be completely encompassed by the greater. A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense."

The focus, then, centers on two factors: (1) evidence to support and justify the lesser offense charge, and (2) whether the greater offense requires the jury to find a disputed factual element not required for conviction of the lesser offense.[3]

Here, the charged greater offense was assault with intent to do great bodily harm by stabbing with a knife. The lesser offense of simple assault unquestionably does not require the element of intent embraced by the charged greater offense. This record clearly reveals that the defense introduced evidence designed to controvert the ability of the defendant to formulate the criminal intent required for conviction of the greater offense, as well as to question where and how the injury was inflicted. Thus, whether the defendant acted with the requisite intent and whether he used a dangerous weapon in the commission of the offense charged were questions for the jury. Because these instructions gave the jury no alternative but to convict on the greater offense or to acquit, and because part of the same evidence supportive of a verdict of the greater offense could have, under other and proper instructions, justified a verdict of the lesser offense, I would hold that the error in refusing to instruct on the lesser offense was prejudicial to the defendant and that, thereby, he was deprived of a fundamental Due Process right.

## II

Whatever may be the soundness and contemporary vitality of the "guardian and ward" concept in other contexts of the relationship between the Indian and the federal government, I am unpersuaded by the notion that such a theory can furnish a plausible predicate for the conclusion that because Arnold Francis Kills Crow is an Indian there is a rational basis for extending him less than full Fifth Amendment Due Process treatment. I think, contrarily, that such a conclusion runs afoul of the well established principle of Supreme Court decisional law that the Fifth Amendment proscribes discrimination that is "so unjustifiable as to be violative of due process."[4]

## III

The question of federal court jurisdiction would not detain me long. If a general grant of jurisdiction to the federal courts by the Congress is adequate to empower the District Court to try an Indian for certain criminal offenses enumerated therein, then it seems clear and elementary to me that the same statute is sufficient to empower the federal court, once having acquired such jurisdiction, to hear and determine the merits of any crime necessarily included within the enumerated offense. The majority asserts that this is not so and that jurisdiction over the lesser offense cannot arise by implication from the general jurisdictional grant.[5] I reject that conclusion. Federal courts always have been deemed to possess the technical jurisdictional equipment essential to guard and protect fundamental rights.[6] I am unable to discern a rational basis for departing from this tradition in this instance. I dissent.

---

3. Driscoll v. United States, 356 F.2d 324, 327 (CA 1 1966), vacated on other grounds, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968) (*per curiam*).

4. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

5. Accord, United States v. Davis, 429 F.2d 552, 554 (CA 8 1970) (dictum).

6. See, *e. g.*, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 392, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).