**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 98-4364

WILLIAM ALAN WHITMER,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, District Judge.
(CR-97-60-F)

Submitted: March 9, 1999

Decided: August 11, 1999

Before NIEMEYER, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael R. Ramos, RAMOS & LEWIS, L.L.P., Shallotte, North Carolina, for Appellant. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, John S. Bowler, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

William Alan Whitmer appeals his jury conviction and resulting sentence for bank robbery in violation of 18 U.S.C. § 2113(a) (1994). Finding no error, we affirm.

On December 23, 1996, William Dillard Irby entered the United Carolina Bank in Wilmington, North Carolina, and robbed teller Francis Millis of $1666.85. Whitmer served as Irby's getaway driver. On January 2, 1997, Irby entered the Cooperative Bank for Savings in Wallace, North Carolina, and robbed teller Amanda Hanchey and other tellers of $10,378. Whitmer was waiting for Irby with the car in a nearby parking lot, but Irby was apprehended walking away from the bank.

At trial, Millis testified that when Irby came up to her window he said, "Yes, you are being robbed. Don't say anything; I will kill you. Give me all your large bills." Millis stated that Irby spoke softly in a low tone and never raised his voice. She also stated that he did not make any threatening gestures and that she did not see a weapon. Millis further testified that it was a very frightening experience and that she feared Irby might come after her because she knew what he looked like.

Hanchey testified that when Irby approached her window, he handed her a bag and told her to fill it up and that he would kill her if she pulled the alarm. When Hanchey had emptied her cash drawer, Irby instructed her to pass the bag down the teller line. She also testified that Irby did not shout, spoke in a low voice, made no threatening gestures, and did not display a weapon. Hanchey also stated that for months afterwards, she was too afraid to wait on customers alone and required another teller to stand with her. Two other tellers testified that they did not hear Irby make any threats.

2

Irby testified that in December 1996, he traveled to North Carolina from Maryland, where he was wanted for a bank robbery. He stayed with David Leveille and met Leveille's sister, Rebecca Leveille, and her fiance, Whitmer. Irby testified that he and Whitmer began comparing their criminal histories and discussing schemes to make money. Whitmer told Irby that his specialty was commercial burglaries and that he used radio scanners to monitor police channels to avoid apprehension. Irby felt that such a crime would take too much time and he and Whitmer decided on bank robbery to obtain some money.

Prior to the first robbery, Irby stayed with Whitmer and Rebecca. Whitmer then programmed his scanner for the Wilmington police frequencies. On the morning of the robbery, Whitmer called in sick and borrowed Rebecca's car. Whitmer then dropped Irby off at the bank and waited for him in a nearby parking lot. After Irby robbed the bank, Whitmer drove him away and Irby shared the stolen money with Whitmer. For the second bank robbery, Irby testified that he instructed Whitmer to park two blocks from the bank. Irby testified that when he began walking away from the bank he heard sirens and saw Whitmer drive away. Irby was apprehended on the sidewalk. Irby further testified that he did not have a driver's license, a car, or the ability to drive.

Detective Thomas Brown of the Wallace Police Department testified that he apprehended Irby while Irby was walking away from the bank and that Irby denied that anyone else was involved in the robbery. However, Irby later told Brown and FBI Special Agent Steven Smith that Whitmer was the getaway driver and that Whitmer used scanners to avoid being caught. Irby then denied knowing Whitmer but later again stated Whitmer was the driver.

Another witness, Judy Ryan, Rebecca Leveille's mother, testified that Whitmer confessed his involvement with the bank robberies to her on two occasions. Rebecca Leveille testified that Whitmer had access to her car on the days of each robbery, that the scanner recovered from her car belonged to Whitmer, and that Whitmer told her to testify that he and Irby had never met. Further testimony established that Whitmer gave a detailed description of his involvement in the

3

robberies to a fellow inmate where he was being housed after his arrest.

On appeal, Whitmer asserts that the district court erred in refusing to instruct the jury on the lesser included offense of bank larceny. We review the district court's jury instruction decisions for abuse of discretion. See United States v. Burgos, 55 F.3d 933, 935 (4th Cir. 1995). A defendant is entitled to an instruction on a lesser included offense only when the evidence would support a conviction of that offense. See Keeble v. United States, 412 U.S. 205, 208 (1973). In order to receive the instruction, "the proof of the element that differentiates the two offenses must be sufficiently in dispute that the jury could rationally find the defendant guilty of the lesser offense but not guilty of the greater offense." United States v. Walker , 75 F.3d 178, 180 (4th Cir. 1996). For an element to be placed "sufficiently in dispute" so as to warrant a lesser included offense instruction, either "the testimony on the distinguishing element must be sharply conflicting, or . . . the conclusion as to the lesser offense must be fairly inferable from the evidence presented." Id. (citation omitted).

The distinguishing element between bank larceny and bank robbery is the use of force or intimidation. Id. The evidence presented in this case established that Irby threatened to kill the tellers he robbed. Such evidence is sufficient to establish the intimidation element necessary for a bank robbery conviction. See United States v. Wagstaff, 865 F.2d 626, 627 (4th Cir. 1989) (evidence is sufficient to sustain a conviction on intimidation element if the defendant's conduct was reasonably calculated to produce fear). Because the evidence of intimidation was not "sharply conflicting," we find the court's refusal to instruct the jury on bank larceny was not an abuse of discretion.

Whitmer next asserts that the evidence was insufficient to support his conviction for bank robbery. We must affirm Whitmer's conviction "if there is substantial evidence, taking the view most favorable to the Government, to support it." See Glasser v. United States, 315 U.S. 60, 80 (1942). Viewed in the light most favorable to the Government, the evidence at trial showed that Whitmer jointly undertook to rob both banks with Irby. Testimony established that Whitmer served as Irby's getaway driver and that Whitmer admitted his involvement

4

in the bank robberies. We therefore find the trial evidence sufficient to sustain his bank robbery conviction.

Whitmer next asserts that the court erred by not reducing his offense level two levels for being a minor participant pursuant to U.S. Sentencing Guidelines Manual § 3B1.2 (1998). The evidence at trial showed that Whitmer was involved in the planning of the robberies, that he shared in the proceeds of the robbery, and that he was integral to Irby's escape. Though he may have played a less direct role in the robberies than Irby, he is not entitled to a reduction under USSG § 3B1.2 because his actions were essential to the offense. See United States v. Palinkas, 938 F.2d 456, 460 (4th Cir. 1991). Thus, the district court's denial of a downward adjustment was not clearly erroneous.

Whitmer finally asserts that the district court erred by applying a two-level enhancement for obstruction of justice pursuant to USSG § 3C1.1. The presentence report concluded that Whitmer threatened a witness in a holding cell and that Whitmer tried to make Rebecca Leveille lie by claiming that Whitmer and Irby did not know each other. Rebecca Leveille confirmed that Whitmer tried to induce her to lie when she testified. Whitmer failed to proffer any evidence showing that the information in the presentence report was unreliable or inaccurate. See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). Therefore, we conclude that the court did not clearly err by applying a two-level enhancement for obstruction of justice.

Accordingly, we affirm Whitmer's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5