UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard GRANT, Defendant-Appellant.

No. 73-1168.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1973.

Decided Dec. 7, 1973.

———◆———

Bruce G. Mason, Omaha, Neb., for defendant-appellant.

Roderic Anderson, Asst. U. S. Atty., Omaha, Neb., for plaintiff-appellee.

Before GIBSON and BRIGHT, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The case before us presents as the principal issue the retroactivity of a new rule of criminal procedure relating to lesser-included offenses.

The background of facts is relatively simple. The defendant, an Indian, subsequent to a drinking fracas in which he allegedly stabbed several persons, was brought to trial under an indictment charging violation of 18 U.S.C. § 1153, specifically, that he did maliciously stab [or] cut named victims with intent to kill, wound, or maim.[1]

At the conclusion of the trial defendant requested the following instruction, defendant's No. 17:

If you find from the evidence beyond a reasonable doubt that each of the foregoing material elements is true, it is your duty to find the defendant guilty of the crime of maliciously stabbing with intent to kill, wound or maim, and you shall not then consider the lesser included offenses hereafter set forth in this instruction. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one or more of the foregoing elements, it is your duty to find the defendant not guilty of the crime of maliciously stabbing with intent to kill, wound or maim. You shall then proceed to consider the lesser included offense of "assault with intent to inflict great bodily injury."

If you find from the evidence beyond a reasonable doubt that each of the foregoing material elements is true, it is your duty to find the defendant guilty of the crime of "assault with intent to inflict great bodily injury," and you shall not then consider the lesser indluced (sic) offense hereafter set forth in this instruction. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one or more of the foregoing material elements, it is your duty to find the defendant not guilty of the crime of assault with intent to inflict great bodily injury. You shall then proceed to consider the lesser in-

---

\* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. 18 U.S.C. § 1153. "Offenses committed within Indian country"
 Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to kill, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
 \* \* \* \* \*
 As used in this section, the offenses of burglary, assault with a dangerous weapon, assault resulting in serious bodily injury, and incest shall be *defined and punished in accordance with the laws `of the State in which such offense was committed.* (Emphasis added)
 Section 28–410 of the Revised Statutes of Nebraska provides in part: "Whoever shall maliciously \* \* \* stab [or] cut \* \* \* any other person with intent to kill, wound or maim such person," shall be punished.

cluded offense of "unlawfully striking or wounding another."

As to such instruction the following colloquy occurred:

[The Court] As to Defendant's Requested Instruction 17, my understanding is that defense counsel indicates that he wants it not to be given.

Mr. Mason: That is correct, your Honor.

The Court: And that his motivation in presenting it was that if I had intended to give "a lesser included offense instruction" he would like it in this language. Am I speaking correctly?

Mr. Mason: That is correct, your Honor.

The Court: Accordingly it will be marked refused.

Mr. Mason: The only objection I would enter to the instructions that have been refused would be Instruction No. 4.[2]

The Court then read the instructions, excluding defendant's above-quoted Requested Instruction No. 17. Following the instructions there were no further objections by counsel.

It was the jury's verdict upon January 31, 1973, that appellant was guilty of the offense charged. Appellant's motion for judgment of acquittal notwithstanding verdict, or in the alternative for a new trial, was denied and this appeal followed.

It is the assertion of appellant upon this appeal that the court erred in refusing the lesser-included offense instruction prayed. Subsequent to trial and pending appeal the Supreme Court held on May 29, 1973, in Keeble v. United States, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973) that an Indian is entitled to lesser-included offense instructions under proper circumstances, despite the fact that such lesser offense is not one of the crimes enumerated in the Indian Major Crimes Act, *supra*, and thus arguably remained under tribal jurisdiction.

The government, not disputing, of course, the general applicability of the *Keeble* ruling, argues, however, that "It did not say that a lesser included offense could not be waived by counsel" and that in the case before us such instruction was, as before quoted, expressly waived by counsel as part of his trial strategy. It urges, as well, the appellant's noncompliance with Fed.R.Crim. P. 30.[3]

 This rule has been upheld by us on numerous occasions,[4] and we do not depart therefrom. Moreover, strategic choices as to the conduct of a trial, deliberately made and employed by counsel, cannot, if they go awry, serve as the basis for a later appeal.[5] However, in the case before us, there was recent and unequivocal authority in this circuit denying precisely the instruction sought. United States v. Keeble, 459 F.2d 757 (8th Cir. 1972); Kills Crow v. United States, 451 F.2d 323 (8th Cir. 1971). In this situation the holding in United States v. Scott, 425 F.2d 55 (9th Cir. 1970) is peculiarly appropriate:

At the time of Scott's trial, there was a solid wall of circuit court authority, including our own, sustaining the presumption against constitutional attack. [citing cases]

An exception would not have produced any results in the trial court.

---

2. This instruction, as to which no issue is presented on appeal, related to objections and rulings thereon.

3. "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury."

4. Friedman v. United States, 381 F.2d 155 (8th Cir. 1967); Harding v. United States, 337 F.2d 254 (8th Cir. 1964); Johnson v. United States, 291 F.2d 150 (8th Cir. 1961).

5. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Robinson v. United States, 448 F.2d 1255 (8th Cir. 1971); Cohen v. United States, 297 F.2d 760 (9th Cir. 1962).

Under these circumstances were we to insist that an exception be taken to save the point for appeal, the unhappy result would be that we would encourage defense counsel to burden district courts with repeated assaults on then settled principles out of hope that those principles will be later overturned, or out of fear that failure to object might subject counsel to a later charge of incompetency. We conclude 'that Scott's failure to except did not waive the point on appeal.· [footnote omitted] [425 F.2d at 57–58.]

Nor is the doctrine of waiver more helpful to the government. It is clear that the appellant did not intentionally and knowingly relinquish any then-existing right he had to the instruction here involved. See United States v. Liguori, 430 F.2d 842 (2nd Cir. 1970). Under these circumstances the failure of appellant to request the instruction or to object to its refusal does not foreclose his raising the issue on this appeal or justify our rejection of his arguments on such grounds.

It remains to examine the applicability of a lesser-included offense instruction as to the facts in the record before us. The jury problem the courts seek to ease through the employment of the lesser-included offense device is well expressed by the jury that allegedly·sought to return the verdict, "We find the defendant almost guilty." [6]

In this situation, under settled law, embodying constitutional requirements, and in accordance with our repeated instructions, a jury not wholly convinced beyond a reasonable doubt of the defendant's guilt is under a duty to acquit. As the court in *Keeble, supra,* expressed it:

True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal.[7]

However, as the court then pointed out:

But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction.[8] (Emphasis in original)

Thus, without the lesser-included offense charge, the jury has been "presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, [the offense charged] or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict."[9] The lesser-included offense doctrine, then, originally conceived and employed as a device to aid the prosecution (a fall-back position, so to speak, in event the proofs failed to live up to expectations)[10] has become, through the years, a useful tool of the defense, employed as a hoped-for mitigation of punishment for the greater offense,[11] and has with this case acquired possible constitutional dimensions.[12]

The requirements for the proper employment of the instruction are summa-

---

6. Osborn, The Mind of the Juror (1937), p. 30. See, also, Compromise Verdicts in Criminal Cases, 37 Neb.L.Rev. 802 (1958).

7. 412 U.S. at 212, 93 S.Ct. at 1997.

8. *Id.* at 212–213, 93 S.Ct. at 1998. Without the assumption, we note, of defendant's guilt of "*some* offense," the use of a "lesser-included" instruction suggests a result of great dubiety. See People v. Seiler, 246 N. Y. 262, 158 N.E. 615 (1927).

9. *Id.* at 213 of 412 U.S., at 1998 of 93 S.Ct.

10. United States v. Markis, 352 F.2d 860 (2nd Cir. 1965), vacated on other grounds 387 U.S. 425, 87 S.Ct. 1709, 18 L.Ed.2d 864 (1967). The early cases may be found in 10 Halsbury's Laws of England, § 791 (Third, Simond's Edition, 1955).

11. 8 Moore's Federal Practice, ¶ 31.03[1].

12. "We cannot say that the availability of a third option—convicting the defendant of

rized in United States v. Whitaker, 144 U.S.App.D.C. 344, 447 F.2d 314 (1971):

[F]or the defense (or prosecution) to be entitled to a lesser included offense charge five conditions must be met. First, as with most other charges, a proper request must be made. Second, the elements of the lesser offense must be identical to part of the elements of the greater offense * * * Third, there must be some evidence which would justify conviction of the lesser offense. Fourth, the proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense.[8] Fifth, "[i]n gen-

8. Sansome v. United States, 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1964). Of course if there is no dispute about the additional fact or facts which, coupled with the lesser included offense, do constitute a greater offense charged originally in the indictment, then the defendant has no right to a lesser included offense charge to the jury. For the trial court to give such a charge would simply be to invite the jury to exercise a degree of mercy by finding him guilty of a lighter offense, when the proof truly justified conviction as charged.

eral the chargeability of lesser included offenses rests on a principle of mutuality, that if proper, a charge may be demanded by either the prosecution or defense." (Footnotes omitted, save for No.[8] infra.) 447 F.2d at 317.

Upon the facts before us all of the above enumerated conditions are met. We have therefore ruled on the element of proper request for such instruction. The lesser crime of assault is part of the elements of the larger crime charged[13] and the record is clear with respect thereto. The element or elements differentiating the two crimes, malice and specific intent, are, due to the drinking involved, sufficiently in dispute so that the jury might consistently find the defendant innocent of the greater crime and guilty of the lesser-included. It is thus our conclusion that a lesser-included offense instruction is warranted upon the evidence presented.[14]

Appellant urges to us that the "new" criminal procedure enunciated in Keeble be applied with full retrospective effect. We need not, in the resolution of this issue, re-examine the considerations leading to the Supreme Court's decision in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) that the traditional concept of retroactivity[15] might, in appropriate cases and in the interests of justice, give way to a concept of prospective limitation,[16] in whole

simple assault—could not have resulted in a different verdict. Indeed, while we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense, it is nevertheless clear that a construction of the Major Crimes Act to preclude such an instruction would raise difficult constitutional questions. In view of our interpretation of the Act, those are questions that we need not face." (footnote omitted) 412 U.S. at 213, 93 S.Ct. at 1998.

13. Sec. 28–410 Neb.Rev.Stat. The trial court's similar conclusion, upon analysis of the relevant Nebraska statutes, is found in the court's Memorandum and Order of January 2, 1973.

14. With respect to Whitaker's fifth requirement, mutuality, reservations with respect thereto were expressed in Keeble, supra at 214 fn. 14 of 412 U.S., 93 S.Ct. 1993, 1998,

but ruling thereon was held to be "a question that we need not now decide." A like observation applies, on the record before us, to the case at bar.

15. E. g., Norton v. Shelbey County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886).

16. There has been much writing in this area, both pre- and post-Linkletter. Perceptive analyses, with supporting authority, will be found in 71 Yale 907 (1962) Prospective Overruling and Retroactive Application in Federal Courts; Justice Schaeffer's The Control of "Sunbursts": Techniques of Prospective Overruling, 42 NYU L.Rev. 631 (1967) ; Judge Fairchild's Limitation of New Judge-Made Law to Prospective Effect Only ; Prospective Overruling or Sunbursting, 51 Marq.L.Rev. 254 (1967) ; Hasler, Retroactivity Rethought; The Hidden Costs, 24 Maine L.Rev. 1 (1972) ; Haddad, Retroactivity Should Be Rethought; A Call for the End of the Linkletter Doctrine, 60 J.Crim.L. 417

or in part.[17] Our problem is the application of the doctrine to the facts here presented.

■ The contours of our inquiry, the test we apply to ascertain whether "new" constitutional protections in the area of criminal procedure are to be applied retroactively, is enunciated in Michigan v. Payne,[18] and calls for the application of a three-pronged test:

> "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive.application of the new standards." Stovall v. Denno, 388 U. S. 293, 297 [87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199] (1967). See also Linkletter v. Walker, 381 U.S. 618, 629, 636 [85 S.Ct. 1731, 1737, 1741, 14 L. Ed.2d 601] (1965); Tehan v. Shott, 382 U.S. 406, 410–418 [86 S.Ct. 459,

461–466, 15 L.Ed.2d 453] (1966); Johnson v. New Jersey, 384 U.S. 719, 726–727 [86 S.Ct. 1772, 1777–1778, 16 L.Ed.2d 882] (1966). 412 U.S. at 51, 93 S.Ct. at 1969.

"Foremost among these factors," it was held in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), "is the purpose to be served by .the new constitutional rule."

The purpose here to be served, that of offering to the jury the option to convict, should the' facts warrant, of a less serious offense, obviously does not bear upon the integrity and fairness of the jury's fact-finding function,[19] a factor heavily weighted by the courts in deciding for or against retroactivity.[20] Here the determination of whatever of the facts that may remain in doubt, as hypothesized in the *Keeble* rationale, will neither be aided nor hampered by the instruction under consideration. Such de-

---

(1969); Mallamud, Prospective Limitation and The Rights of the Accused, 56 Ia.L.Rev. 321 (1970); Retroactivity of Criminal Procedure Decisions, 55 Ia.L.Rev. 1309 (1970).

17. "Thus, the courts have four alternatives in any specific case for deciding the question of retroactive application. The first alternative is full retroactivity, the new rule applying to all past, present, and future cases. The second alternative is limited retroactivity, which would apply the new rule to parties at bar and cases not final at the time of decision. The third alternative is limited prospectivity, which would apply the new rule to the parties at bar and to cases commenced after the time of decision. The fourth alternative is pure prospectivity, the new rule applying only to future cases, and not even to the litigants before the court." (footnote omitted) 55 Ia.L.Rev. at 1316 (1970). See, also, Harlan, J., dissenting in Desist v. United States, 394 U.S. at 257, 89 S.Ct. 1030 (1969).

18. 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973).

19. Linkletter v. Walker, *supra*, at 629 of 381 U.S., 85 S.Ct. 1731.

20. "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.

"It is quite different where the purpose of the new constitutional standard proscribing the use of certain evidence or a particular mode of trial is not to minimize or avoid arbitrary or unreliable results but to serve other ends. In these situations the new doctrine raises no question about the guilt of defendants convicted in prior trials." Williams v. United States, 401 U.S. 646, 91 S. Ct. 1148, 28 L.Ed.2d 388 (1970), plurality opinion. See also Roberts v. Russell, 392 U.S. 293, 294, 88 S.Ct. 1921, 1922, 20 L.Ed. 2d 1100 (1968): " 'We have * * * retroactively applied rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial.' Stovall v. Denno, 388 U.S. 293, 298 [87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199]. See Jackson v. Denno, 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908]; Gideon v. Wainwright, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799]; Reck v. Pate, 367 U.S. 433 [81 S.Ct. 1541, 6 L.Ed.2d 948]; Linkletter v. Walker, 381 U.S. 618, 639 [85 S.Ct. 1731, 1743, 14 L.Ed.2d 601] n. 20; Johnson v. New Jersey, 384 U.S. 719, 727–728 [86 S.Ct. 1772, 1777–1778, 16 L. Ed.2d 882]; *cf.* Brookhart v. Janis, 384 U. S. 1 [86 S.Ct. 1245, 16 L.Ed.2d 314]."

termination will, however, affect the verdict and to this extent may fairly be construed as going to the "fairness of the trial" [21] in its broadest sense, or, alternatively, as "touching on the 'integrity' of one aspect of the judicial process.' [22] Here, in attempting to assess the jury's possible exercise of its " 'mercy-dispensing power' " [23] with respect to a lesser-included offense, we are in the realm of the sheerest speculation. The best we can do is to weigh probabilities, for, as was made clear in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) "the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree." 384 U.S. at 728–729, 86 S.Ct. at 1778.

■ In this situation, on balance, we consider the factors of, primarily, a procedural change that has no bearing on the fact-finding process, one that is based upon the premise that the "defendant is plainly guilty of *some* offense" (*Keeble, supra*), and one effecting an unheralded change in procedures relied upon by law enforcement officials for many years.[24] It is our judgment upon these and other factors we have examined that full retroactive application would have a deleterious effect upon the administration of justice,[25] and that, by no standards heretofore enunciated, can we give the new procedure full retroactive application.

To the above, however, there is a *caveat*, namely, that in a situation where a defendant's case has not reached final judgment at the time of the rendition of the new rule, the plainest considerations of justice and equity require that the rule apply to such pending case. Linkletter v. Walker, *supra*.[26] See, also, Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Pendergrast v. United States, 135 U.S.App.D.C. 20, 416 F.2d 776 (1969), cert. denied 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969). Such, as will be seen from the dates heretofore listed, is the situation here. Accordingly, the case is

Reversed and remanded for new trial.

21. *Linkletter, supra*, at 639, 85 S.Ct. 1731.

22. Michigan v. Payne, *supra*, at 52 of 412 U.S., at 1969 of 93 S.Ct.

23. United States v. Whitaker, *supra*, at 319 of 447 F.2d.

24. Desist v. United States, *supra*.

25. *Cf. Linkletter, supra*, at 636 of 381 U.S., 85 S.Ct. 1731.

26. "[I]n this case, we are concerned only with whether the exclusionary principle

enunciated in *Mapp* applied to state court convictions which had become final[5] before

"5. By final we mean when the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in Mapp v. Ohio [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081]." 381 U.S. at 622, 85 S.Ct. at 1734.

rendition of our opinion.