**UNITED STATES of America,**
**Appellee,**

v.

**Alfred John THOMPSON, Appellant.**

**No. 73-1412.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1973.

Decided Jan. 24, 1974.

David Garcia, Devils Lake, N. D., for appellant.

Eugene K. Anthony, Asst. U. S. Atty., Fargo, N. D., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and STUART, District Judge.*

STEPHENSON, Circuit Judge.

Alfred John Thompson, an Indian, appeals his conviction of assaulting his wife, Diane Marie Thompson, with a dangerous weapon, a .22 caliber rifle, with intent to do bodily harm, in violation of the Major Crimes Act, 18 U.S.C. § 1153. The Act "authorizes the prosecution in federal court of an Indian

* W. C. STUART, District Judge, Southern District of Iowa, sitting by designation.

charged with the commission on an Indian reservation of certain specifically enumerated offenses." Keeble v. United States, 412 U.S. 205, 205–206, 93 S.Ct. 1993, 1994, 36 L.Ed.2d 844 (1973).

At the close of trial, the United States District Court for the District of North Dakota instructed the jury both as to assault with a dangerous weapon with intent to commit murder, charged by the indictment, and as to the lesser included offense for which appellant was convicted.[1]

Appellant assigns several errors on appeal. The most significant is the failure of the district court to instruct upon the lesser included offense of simple assault, appellant's failure to request such an instruction notwithstanding. *See,* United States v. Grant, 489 F.2d 27, at 29–30 (CA8 filed Dec. 7, 1973).

The criminal act leading to appellant's conviction took place on the Devil's Lake Sioux Indian Reservation, North Dakota. The record establishes that on the evening of December 9, 1972, appellant and his wife had an argument at a bar in Oberon, North Dakota. Appellant eventually left the bar alone. His wife, accompanied by friends, left subsequently by automobile owned by William and Martina Kazena. At approximately 1:30 a. m., the Kazena car, driven by one Glen Richard Walking Eagle, arrived in neighboring Fort Totten, North Dakota. Upon arrival in Fort Totten, a car driven by appellant approached the Kazena car from the rear and blinked its lights, causing the Kazena car to stop. Appellant also stopped, and armed with a .22 caliber rifle, walked over to the Kazena car, opened its driver's side door and ordered his wife to "get out." As Mrs.

Thompson started to get out she heard a shot fired and threw herself down upon the floor of the rear seat. Three men in the front seat then jumped appellant and wrestled the rifle away. The men then took appellant to the Fort Totten police station in his own car. At the police station they told officer Homer Joseph White Buffalo that appellant had shot at them and that the bullet had hit the car. Officer White Buffalo examined the weapon and found a live round jammed in the chamber.

After appellant had been taken from the scene of the assault, Mrs. Thompson told Martina Kazena that she had been shot. Mrs. Kazena testified that she felt the back of Mrs. Thompson's head, that "it was all wet with blood," and that she drove Mrs. Thompson to the Devil's Lake hospital. Dr. Arvin S. Rosen, a treating physician testified that the wound was "jagged" and that "there appeared some black, brownish particles in the wound" which he assumed to be burnt powder. Dr. Rosen acknowledged that the wound was consistent with a gunshot wound.

An inspection of the Kazena car subsequent to the incident revealed a slight dent on the roof of the car over the driver's side. Also, blood was found on the car's interior.[2] The owner of the vehicle, William Kazena, testified that to the best of his knowledge the dent was not there prior to the shooting. The record discloses that the .22 caliber rifle used by appellant belonged to Alan Chris Knatterud and that it had been stolen from the cab of his pick-up truck on the night of the incident. Mr. Knatterud testified that although there were no shells in the rifle's chamber when it was

---

1. *See,* North Dakota Century Code § 12–26–08 (1960). As noted in *Keeble, supra,* at n. 13: "The Major Crimes Act provides that an Indian may be tried in federal court for the offense of assault resulting in serious bodily injury. The statute further provides that this offense 'shall be defined and punished in accordance with the laws of the State in which such offense was committed.'"

The instructions upon the lesser included offense of assault with a dangerous weapon

with intent to do bodily harm (Nos. 13 and 14), were given at the request of the government. Appellant made no objection to the giving thereof.

2. Testimony of Acting Agency Special Officer Charles H. Cruse, Bureau of Indian Affairs, Officer White Buffalo, Richard Walking Eagle and William Kazena.

stolen, there were shells in the magazine. He also indicated that this particular rifle had never accidentally discharged while in his possession.

■ Among the requirements for either party to be entitled to an instruction upon the lesser included offense, "the proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." And, "if there is no dispute about the additional fact or facts which, coupled with the lesser included offense, do constitute a greater offense charged originally in the indictment, then the defendant has no right to a lesser included offense charged to the jury." United States v. Grant, *supra,* 489 F.2d 27 (CA8 1973); United States v. Whitaker, 144 U.S.App.D.C. 344, 447 F.2d 314, 317 & n. 8 (1971); *accord,* Sansone v. United States, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965).

■ In the case before us, the evidence offers no justification for an instruction on simple assault. First, an element differentiating the crime for which appellant was convicted from a simple assault is that the former must have been committed with a "sharp or dangerous weapon." North Dakota Century Code, *supra,* § 12–26–08. On the basis of this record, the character of the weapon used by appellant was not an open question. The evidence establishes that when the assault was made, appellant was armed with a loaded .22 caliber rifle; that appellant was waiving the rifle in the air when he ordered his wife out of the Kazena vehicle; and that a shot was fired as Mrs. Thompson attempted to exit the vehicle ostensibly causing the injury to the back of her head. It is our view that this loaded rifle when used in the manner shown by the evidence in this case, constituted a dangerous weapon *per se. See,* United States v. Davis, 429 F.2d 552, 555 (CA8 1970) (interpreting North Dakota law),

rev'd on other grounds, *see,* Keeble v. United States, *supra,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

Secondly, the record clearly demonstrates that appellant's drinking did not cause the nature of his intent to be in dispute to such an extent that the jury could have convicted him of simple assault if it were presented with that option. *E. g.,* United States v. Grant, *supra,* 489 F.2d 27 No. 73–1168 (CA8 filed Dec. 7, 1973); *compare,* Keeble v. United States, *supra,* 412 U.S. 205, 213, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844 (1973).

■ It is undisputed that on the night of the assault, appellant had been drinking heavily. However, he drove to the scene of the incident under his own power. He sought out the Kazena car and caused it to stop. Then, while armed with a .22 caliber rifle which he had stolen just prior to the assault, appellant ordered his wife to remove herself from the Kazena car. There is ample support in the record that at the time of the assault and at the time of his subsequent arrest appellant was coherent, that he had no difficulty understanding or being understood, and that he had no trouble walking.

The record is so incumbered with the physical facts and conduct of appellant that a foundation for such an instruction is lacking. We therefore hold that an instruction upon simple assault was not required.

■ Appellant next contends that it was error for the government, during rebuttal argument, to comment and dwell upon the fact that appellant had not called any witness. We disagree. The government is free to comment upon the defense's failure to call any witnesses to refute or contradict the government's case, excepting where the defendant alone has the information to do so. United States v. Lipton, 467 F.2d 1161, 1168 (CA2 1972); *see,* Baker v. United States, 115 F.2d 533, 544 (CA8 1940). We have reviewed the govern-

ment's rebuttal argument in its entirety[3] and conclude that the comments in question do not constitute reversible error.

■ Appellant further contends that the district court erred upon voir dire by not asking whether any of the jury panel were members of a social club whose membership was restricted to the Caucasian race. Appellant argues that he would have been in a better position to use his peremptory challenge if it were known that a prospective juror was a member of an organization which would have excluded appellant because he is an Indian. We are satisfied that the questions posed by the trial judge sufficiently interrogated the jurors upon the subject of racial prejudice. Moreover, "the trial judge was not required to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." Ham v. South Carolina, 409 U.S. 524, 527, 93 S.Ct. 848, 850, 35 L.Ed.2d 46 (1973).[4] *See,* Ross v. United States, 374 F.2d 97, 104–105 (CA8 1967).

■ Appellant's final contention is that there was insufficient evidence to support a finding of guilt. Our review of the record discloses substantial evidence supporting appellant's conviction.

Affirmed.

3. We note from the record that appellant made no objection to the government's rebuttal argument. It was responsive.

4. The following questions were posed to the jury by the trial judge:
THE COURT: Now, I believe it is charged in the indictment that Alfred John Thompson, the Defendant, is an Indian.
Do any of you have any prejudice against the Indian race?
(No response.)
THE COURT: Are there any of you that feel if you were selected as a member of the jury that it would not be possible to give this Defendant the same consideration that you would give to any other Defendant that might be brought into court on this charge?
(No response.)
THE COURT: Do any of you feel that you have been influenced in any way by the recent publicity in the newspapers and news media relating to incidents involving the Indian people, for example, at Wounded Knee or anywhere else?
(No response.)
THE COURT: Do any of you feel that this would in any way influence you?
(No response.)
THE COURT: Remember, the object of a trial and the object of the Courts is to do justice; and that everybody who comes into court is entitled to justice based on the evidence and based on the law governing us as it has been adopted and determined by the Congress of the United States.
Are there any of you who feel that you could not do justice in this case if you were selected as a member of the jury?
(No response.)

