Peter H. JOE, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 74–1078.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 12, 1974.

Decided Dec. 23, 1974.

As Modified on Denial of Rehearing March 24, 1975.

Jack L. Love, Federal Public Defender, Albuquerque, N. M., for petitioner-appellant.

Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., on the brief), for respondent-appellee.

Before MURRAH, BARRETT and DOYLE, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from an order of the district court dismissing without a hearing a § 2255 petition to set aside a conviction for rape on an Indian reservation under the Major Crimes Act of 1885, 18 U.S.C. §§ 1153, 3242. We reverse the order.

The Act confers federal jurisdiction over certain enumerated major crimes, including rape, committed by an Indian on an Indian reservation. In this case, the indictment charged the crime of rape, which under the Act is to be defined in accordance with local law. The trial court was requested to instruct on non-enumerated offenses—attempted rape, simple assault, and battery—all lesser included offenses under local law, in this case New Mexico law. N.M.Stat. Ann. §§ 40A–9–2, 40A–3–4, 40A–28–1 (1953). The court refused the request and submitted the case to the jury solely on the issue of rape.

Affirming the case on direct appeal, we held that the Act conferred federal jurisdiction only over crimes specifically enumerated in § 1153 and that we look to state law only for the definition of federally enumerated crimes. United States v. Joe, 452 F.2d 653 (10th Cir. 1972), cert. denied, 406 U.S. 931, 92 S.Ct. 1797, 32 L.Ed.2d 134 (1972). Applying the maxim of strict construction of federal penal statutes, the Court reasoned that Congress, having specifically enumerated certain lesser included offenses (viz., assault with intent to commit rape), necessarily excluded all others such as attempted rape, simple assault, and battery.

The month before Joe was decided, the Eighth Circuit had affirmed for the second time a like construction of § 1153. See Kills Crow v. United States, 451 F.2d 323 (8th Cir. 1971), cert. denied, 405 U.S. 999, 92 S.Ct. 1262, 31 L.Ed.2d 467 (1972), following United States v. Davis, 429 F.2d 552 (8th Cir. 1970). The same construction of § 1153 was explicitly reaffirmed by the Eighth Circuit in United States v. Keeble, 459 F.2d 757 (8th Cir. 1972). Certiorari was granted in Keeble (409 U.S. at 1037, 93 S.Ct. 538, 34 L.Ed.2d 485, Dec., 1972) seven months after it had been denied in Joe (May, 1972) and Kills Crow (March, 1972).

In Keeble, the Supreme Court overruled the prior construction of § 1153, specifically holding that a federal district court with jurisdiction over an enumerated offense also has jurisdiction to instruct on non-enumerated offenses, defined as lesser included offenses under local law. And it was therefore error not to instruct on the non-enumerated offenses, if the evidence warranted. The holding was based primarily on the mandate of § 3242 of the Act, which provides that Indians charged under § 1153 shall be tried "in the same manner, as are all other persons committing [the crime] within the exclusive jurisdiction of the United States." Applying this "explicit statutory direction," the Court could "hardly conclude that Congress intended to disqualify Indians from the benefits of a lesser offense instruction, when those benefits are made available to any non-Indian charged with the same offense." 412 U.S. 205 at 212, 93 S.Ct. 1993 at 1997, 36 L.Ed.2d 844. The Court reasoned that any other construction of § 1153 would raise "difficult constitutional questions." Id. at 213, 93 S.Ct. 1993. The defendant would therefore be entitled to an instruction on a lesser included offense if, under Rule 31(c) of the Federal Rules of Criminal Procedure, "the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." Id. at 208, 93 S.Ct. at 1995. The government apparently conceded the sufficiency of the evidence to warrant an instruction on the lesser offense, and the case was accordingly reversed for failure to so instruct as requested.

In our case, the government contends that Keeble does not apply here because (1) the evidence did not warrant the instruction and, (2) in any event, Keeble is not retroactive to authorize an instruction on non-enumerated lesser included offenses. In dismissing this petition, the trial court agreed with both contentions. We respectfully disagree with both.

In our case, penetration is an essential element of the crime of rape but not of any lesser offense. The essential elements of the crimes are not the same. At the trial, it was uncontroverted that the prosecutrix had intercourse with someone. She testified that she had been raped by Joe and another man. Joe denied that he had raped her. He testified that he "grabbed [the prosecutrix] down" and, with her consent, attempted to have sexual intercourse but was unable to do so because he was "real drunk" and could not effect penetration. If the jury believed Joe or entertained a reasonable doubt about his penetration, they should have acquitted him of rape and could have convicted him of a lesser included offense, if instructed as requested.[1] We cannot say that the availability of an option to convict of a lesser offense would not have resulted in a different verdict. And see, United States v. Grant, 489 F.2d 27, 31 (8th Cir. 1973).

The government seeks to avoid the impact of this by invoking for the first time on appeal the so-called Aider and Abettor Statute, 18 U.S.C. § 2 (which makes aiders and abettors as guilty as principals). The short answer is that no instruction on this statute was given or requested, and it is too late now to change the prosecution theory to rely on it. We are aware of cases holding that 18 U.S.C. § 2 is available for the instruction to the jury even though not mentioned in the indictment. See Wood v. United States, 405 F.2d 423 (9th Cir. 1969); Theriault v. United States, 401 F.2d 79 (8th Cir. 1968); United States v. Ramsey, 374 F.2d 192 (2d Cir. 1967). In all these cases, however, unlike our own, the trial court did instruct the jury on 18 U.S.C. § 2. We have found no case in which a conviction has been upheld by the device of incorporating 18 U.S.C. § 2, when it was not mentioned at all in the instructions to the jury. We decline to do so here. We conclude that the evi-

---

1. Joe did not request an instruction on the enumerated lesser included offense of assault with intent to commit rape. The only error alleged here is the failure to instruct on the non-enumerated lesser included offenses as requested.

dence warranted the requested instructions.

This brings us squarely to the controlling applicability of Keeble, otherwise stated in terms of retroactivity. Ever since the exclusionary rule in Mapp v. Ohio was denied full retroactivity in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the subject has been the concern of the courts under almost every conceivable circumstance. The case law has been almost as varied as it has been prolific. Fortunately, we need not review the myriad of decisions which have served to shape the rule. It is sufficient for our purposes that the subject has been recently and exhaustively reviewed in Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973). We take off from Gosa.

■ Implicit in Gosa is the axiom that subject matter jurisdiction is always open to collateral attack. And so it is here. See Tooisgah v. United States, 186 F.2d 93 (10th Cir. 1950). Nonetheless, like Gosa, we deal not with subject matter jurisdiction but rather with the appropriate exercise of it in the context of constitutionally guaranteed procedural rights. Gosa considered the retroactive application of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). O'Callahan involved military jurisdiction over nonmilitary offenses, somewhat akin to Keeble's concern with federal jurisdiction over Indian offenses. According to Gosa, "The basis for the 'jurisdictional' holding in O'Callahan obviously was the increasing awareness and recognition of the important constitutional values [procedural rights in criminal cases] embodied in the Fifth and Sixth Amendments"—i. e., the appropriate exercise of military jurisdiction when balanced against constitutional guarantees. 413 U.S. at 674, 677, 93 S.Ct. at 2933. Similarly, recognition of Fifth Amendment procedural values was

an integral part of the basis for the holding in Keeble—a statutory construction to avoid constitutional confrontation.

Having recognized that O'Callahan involved, in essence, a new procedural rule, Gosa first faced the necessity of deciding whether the case represented a "clear break with the past." Id. 413 U.S. at 672, 93 S.Ct. 2926. The Court concluded that it did, even though O'Callahan did not expressly overrule any prior decision, because "it did announce a new constitutional principle, and it effected a decisional change in attitude that had prevailed for many decades." Id. 413 U.S. at 673, 93 S.Ct. at 1932. The Court then proceeded to apply the well recognized three prong test[2] to determine non-retroactivity. In our case, we follow Gosa's clear-break analysis, but we are convinced that, unlike O'Callahan, Keeble did not effectuate a clear break with the past. This is so, we think, because Keeble did not announce new constitutional doctrine nor did it overrule long established precedent. It is at this point that we depart Gosa without reaching the three prong test.

Long before Keeble, it was fairly well settled that, in enacting § 1153, Congress did not intend to grant federal jurisdiction to indict for non-enumerated offenses. See United States v. Jacobs, 113 F.Supp. 203 (E.D.Wis.1953), appeal dismissed, 346 U.S. 892, 74 S.Ct. 228, 98 L.Ed. 394 (1953). See also United States v. Rider, 282 F.2d 476 (9th Cir. 1960); United States v. Red Wolf, 172 F.Supp. 168 (D.Mont.1959); Petition of McCord, 17 Alaska 162, 151 F.Supp. 132 (1957). Jacobs and its progeny were based on the maxim of strict construction of all penal statutes for the preservation of tribal jurisdiction and the protection of Indian defendants. Construing the same statute in the more recent cases, Davis, Kills Crow and Joe, the courts applied the same maxim to hold that Congress

**2.** The three prongs of the test are: (1) the purpose to be served by the new standard; (2) the extent of the reliance by law enforcement authorities on the old standards; and (3) the effect on the administration of justice of retroactive application of the new standards. 413 U.S. at 679, 93 S.Ct. 2926.

did not intend to grant federal jurisdiction to instruct on non-enumerated lesser included offenses. The only essential difference between the two lines of cases is that Jacobs dealt with jurisdiction to indict for a non-enumerated offense; Davis, with jurisdiction to instruct on a non-enumerated offense, when it is a lesser included offense of the enumerated offense which is the subject of the indictment.

Underlying all the case law is the strict construction of penal statutes for the preservation of tribal government and the protection of the accused Indian. Indeed, our decision on direct appeal is based primarily upon strict construction of the federal criminal statute without reliance upon any of the prior case law. Keeble reversed the Davis rule, but it expressly refrained from expanding federal jurisdiction under § 1153. "[W]e emphasize," said the Court, "that our decision today neither expands the reach of the Major Crimes Act nor permits the Government to infringe the residual jurisdiction of a tribe by bringing prosecutions in federal court that are not authorized by statute." 412 U.S. at 214, 93 S.Ct. at 1998.

It would be false, however, to say that Keeble did not represent an attitudinal change in the sense that it added a procedural dimension to the statute by authorizing an appropriate exercise of a jurisdiction not recognized in the Davis cases.[3] Yet in doing so, Keeble avowedly did not establish any new constitutional doctrine. Instead, as we have seen, it interpreted § 1153 in obedience to the mandate of § 3242 to avoid constitutional complications. Nor did it overturn long established precedent. It overturned only the rule of the recent Davis cases, without disturbing the Jacobs rule or relaxing the rule of strict construction.

▇ If Keeble law is applicable, it dictates a reversal of the conviction in this case. That conviction, affirmed on appeal, was, to be sure, in consonance with contemporaneous interpretation of § 1153. And non-retroactivity as a species of stare decisis and res judicata does indeed have its claims. But the doctrine is neither immutable nor sacrosanct. It is based upon the policy of legal stability. And the societal interest in stability must be balanced against essential justice to individuals. See Radcliff v. Anderson, No. 73–1520 (10th Cir. 1974) (opinion by Judge Breitenstein) citing Gosa v. Mayden, supra.

▇ We have repeatedly held that collateral relief is not available to set aside a conviction on the basis of an erroneous jury instruction unless the error operated to deprive the convicted defendant of "a fair trial in a constitutional sense." Lorraine v. United States, 444 F.2d 1, 2 (10th Cir. 1971); Linebarger v. Oklahoma, 404 F.2d 1092 (10th Cir. 1968), cert. denied, 394 U.S. 938, 89 S.Ct. 1218, 22 L.Ed.2d 470 (1969). § 2255 is not intended to serve the office of an appeal. But Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) reminds us that the statute was designed to empower a sentencing court to correct a judgment to conform to an intervening change in the law affecting the fundamental rights of a convicted defendant. Though Keeble established no new constitutional doctrine, it did, as we have seen, construe § 1153 in a constitutional context to avoid constitutional difficulties. In our case, the defendant was deprived of the protection afforded by an instruction on a lesser included offense warranted by the evidence. The deprivation of this requested instruction affected a right which Keeble recognized as fundamental against the background of the Due Process Clause.

United States v. Grant is indistinguishable from our own case except the attack there was direct instead of collateral. Applying the "three prong test" the court concluded that inasmuch as Keeble effected "an unheralded change in proce-

---

**3.** The dissent strongly maintained that Keeble had the effect of conferring a new and expanded jurisdiction upon federal courts. 412 U.S. at 215, 217, 93 S.Ct. 1993.

dures relied upon by law enforcement officials for many years . . . full retroactive application would have a deleterious effect upon the administration of justice, and that, by no standards heretofore enunciated, can we give the new procedure full retroactive application." Id., 489 F.2d at 33. It further concluded, however, that since that case had not reached final judgment at the time of the rendition of the Keeble rule, "the plainest considerations of justice and equity require that the rule apply to such pending case." Id. Though the reasoning in Grant is divergent from our own, that court was guided as we were in Radcliff by considerations of essential justice.

It is significant, we think, that in our case petitioner pursued this same claim on direct appeal to the point of denial of certiorari. See 417 U.S. at 345 and at note 15, 94 S.Ct. at 2305. If the direct appeal had been under consideration eleven months later, when certiorari was granted in Keeble, we would have doubtless heeded the implication of the grant of certiorari limited to the very question which petitioner raised there and here. (Rehearing in this case was finally denied in January, 1972; certiorari in Keeble was granted in December of the same year.) We do not think it is too late now to heed the mandate of intervening Keeble law.

In our view Keeble effected no break with the past, simply because the precedent it overturned had no past beyond Davis. Indeed, Keeble reaffirmed fundamental law to uphold fundamental rights of the defendant. We think Keeble law should be applied here.

The judgment is accordingly reversed, and the case remanded with directions to grant a new trial.