The petitioner, Tom Beavers, was convicted on October 20, 1989, of distributing cocaine. On December 5, 1989, he was sentenced to 15 years in the penitentiary and was fined $10,000. He appealed his conviction to the Court of Criminal Appeals. On February 28, 1991, Beavers filed in that court a supplemental brief in which he raised the issue of whether the jury had been properly instructed on "reasonable doubt." As the basis for this supplemental brief, Beavers cited Cage v.Louisiana, ___ U.S. ___, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).Cage had been decided by the United States Supreme Court on November 3, 1990. The Court of Criminal Appeals affirmed Beavers's conviction with an unpublished memorandum, 579 So.2d 705, issued March 1, 1991.
The unpublished memorandum, which has been filed with this Court, did not address the issue regarding the Cage case. However, in overruling Beavers's application for rehearing, the Court of Criminal Appeals, in another unpublished memorandum, stated:
 "Appellant's contention that the trial court erred to reversal by using such words as 'substantial doubt' and 'moral certainty' in defining the term 'reasonable doubt' is procedurally barred from review. See Vinzant v. State, 462 So.2d 1037
(Ala.Cr.App. 1984).[1] A careful review of the record indicates that this issue is raised for the first time on application for rehearing.[2]"
We granted Beavers's petition for a writ of certiorari to the Court of Criminal Appeals in order to address the issue raised on appeal regarding the jury instruction on "reasonable doubt."
Beavers argues that the trial court improperly instructed the jury on the definition of "reasonable doubt" and that the trial court's instruction had the effect of minimizing the State's burden of proof. The trial court instructed the jury as follows:
 "Now you will want to know what a reasonable doubt is. When I say the State is under the burden of proving guilt beyond a reasonable doubt and to a moral certainty, that does not mean that the State must prove an alleged crime beyond every imaginable or speculative doubt or beyond all possibility of the State [sic] because that would be impossible.
 "Reasonable doubt means an actual substantial doubt. It could arise out of the testimony of the case or it could arise from the lack of testimony in the case. It is a doubt [to] which a reason can be assigned.
 "And the expression 'to a moral certainty' means practically the same thing as beyond a reasonable doubt. Because if you are convinced to a point where you no longer have a reasonable doubt, then you are convinced to a moral certainty."
Beavers did not object to this instruction. Therefore, before we can address the argument that this instruction was erroneous in light of the holding in Cage, we must consider whether the failure to object will be excused.
Rule 21.2, A.R.Crim.P., provides:
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
This Court in Biddie v. State, 516 So.2d 846 (Ala. 1987), held: *Page 1322 
 " 'In order to preserve alleged error in the trial court's oral instructions to the jury, the objection must be made prior to the jury's retirement for deliberation, but need not be made in their presence. The objection must be specific enough to point out the alleged error so as to allow the judge to correct the error.'
 "Ex parte Washington, 448 So.2d 404, 406 (Ala. 1984).
 " 'It is likewise clear that when a party contends that the trial court committed reversible error in making charges or comments to the jury, the error can not be raised for the first time on appeal. Absent an objection to an alleged error and a ruling by the trial court, there is nothing for this Court to review.'
"Showers v. State, 407 So.2d 169, 171 (Ala. 1981)."
Id. at 846-47 (citations omitted) (emphasis added in Biddie).
Beavers argues that he should be excused from the "objection" requirement because, he says, Cage v. Louisiana declared a "new rule." He argues that, as a general principle of law, criminal defendants should be allowed to raise for the first time on appeal an issue regarding constitutional law based on a new United States Supreme Court ruling, unless the United States Supreme Court has specifically limited its ruling. The point of his argument seems to be that criminal defendants should not be required to object to current principles of established law in order to preserve an issue for appellate review based on the possibility that a "new rule" may be established. To support this proposition, Beavers cites this Court to the case ofUnited States v. Grant, 489 F.2d 27 (8th Cir. 1973), which states:
 " '[T]o save the point for appeal, the unhappy result would be that we would encourage defense counsel to burden district courts with repeated assaults on then settled principles out of hope that those principles will be later overturned, or out of fear that failure to object might subject counsel to a later charge of incompetency. We conclude that Scott's failure to except did not waive the point on appeal.' "
Id. at 30 (quoting United States v. Scott, 425 F.2d 55, 57-58
(9th Cir. 1970)).
We agree that there may from time to time be situations where a criminal defendant is not barred from appellate review of an issue regarding a particular "new rule" by his failure to object. However, we do not believe that Cage v. Louisiana
presents such a "new rule."
The United States Supreme Court in Griffith v. Kentucky,479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), stated that "the nature of judicial review requires that we adjudicate specific cases, and each case usually becomes the vehicle for the announcement of a new rule." Id. at 322, 107 S.Ct. at 712
(emphasis added). The Court in Griffith, noting its prior decision in United States v. Johnson, 457 U.S. 537,102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), held that the existing caselaw had established the following rule:
 " '[S]ubject to [certain exceptions], a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered.' The exceptions to which we referred related to three categories in which we concluded that existing precedent established threshold tests for retroactivity analysis. In two of these categories, the new rule already was retroactively applied: (1) when a decision of this Court did nothing more than apply settled precedent to different factual situations, and (2) when the new ruling was that a trial court lacked authority to convict a criminal defendant in the first place. . . .
 "The third category — where a new rule is a 'clear break' with past precedent — is the one at issue in these cases. . . .
". . . .
 ". . . [W]e recognized what may be termed a 'clear break exception.' Under this exception, a new constitutional rule was not applied retroactively, even to cases on direct review, if the new rule explicitly overruled a past precedent of this Court, or disapproved a practice this *Page 1323 
Court had arguably sanctioned in prior cases, or overturned a longstanding practice that lower courts had uniformly approved."
Griffith, 479 U.S. at 324-25, 107 S.Ct. at 713-14.
Griffith went on to hold that
 "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."
Id. at 328, 107 S.Ct. at 716.
While Griffith held that all cases establishing a "new rule for the conduct of criminal prosecutions" will be retroactively applied, it recognized two facts important to our decision: (1) generally, each case decided by the Supreme Court establishes a "new rule," and (2) there are different types of "new rules."
Cage announced a "new rule." However, the "new rule" was not a "clear break" with past precedent, but merely the application of the established precedent to a different factual setting, inCage a particular jury instruction on the definition of "reasonable doubt."
The issue in Cage, as defined by that Court, was "whether the reasonable doubt instruction in [that] case complied with [Inre] Winship [, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368
(1970)]." Cage v. Louisiana, ___ U.S. ___, 111 S.Ct. 328, 329,112 L.Ed.2d 339 (1990). The Winship case established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."Winship, 397 U.S. at 364, 90 S.Ct. at 1072. In reaching its conclusion in Winship, the Supreme Court stated:
 "The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence — that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' Coffin v. United States, 156 U.S. [432], at 453, 15 S.Ct. [394], at 403 [39 L.Ed. 481
(1895)]. As the dissenters in the New York Court of Appeals observed, and we agree, 'a person accused of a crime * * * would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case.' [W. v. Family Court] 24 N.Y.2d [196], at 205, 299 N.Y.S.2d [414], at 422, 247 N.E.2d [253], at 259 [1969].
 "The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt. As we said in Speiser v. Randall, 357 U.S. [513], at 525-526, 78 S.Ct. [1332], at 1342 [2 L.Ed.2d 1460 (1958)]: 'There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value — as a criminal defendant his liberty — this margin of error is reduced as to him by the process of placing on the other party the burden of * * * persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of * * * convincing the factfinder of his guilt.' To this end, the reasonable-doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.' *Page 1324 
Dorsen Rezneck, In Re Gault and the Future of Juvenile Law, 1 Family Law Quarterly, No. 4, pp. 1, 26 (1967).
 "Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty."
Id. 397 U.S. at 363-64, 90 S.Ct. at 1072.
The relevant portion of the instruction at issue inCage was quoted as follows:
 " 'If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty.' "
Cage, 111 S.Ct. at 329 (quoting State v. Cage, 554 So.2d 39, 41
(La. 1989)).
After construing the instruction "as reasonable jurors could have understood the charge as a whole," the Supreme Court held that "the instruction at issue was contrary to the 'beyond a reasonable doubt' requirement articulated in Winship." Id.
Therefore, we hold that Cage established a "new rule" under the standards of United States v. Johnson and Griffith v. Kentucky, so that Cage is to be applied retroactively to all cases pending on direct review and not yet final. However, it was not a "clear break" with the past precedents and, therefore, failure to object is not excused.
The decision in Cage did not, as Beavers would have this Court believe, (1) explicitly overrule a past precedent; (2) disapprove of a practice the Supreme Court had arguably sanctioned in prior cases; or (3) overturn a long-standing practice that courts in this State had uniformly approved. What the Court did in Cage was to apply to a particular jury instruction the standard applicable in all criminal cases, viz.: that the defendant must be convicted by a unanimous jury that finds his guilt "beyond a reasonable doubt."
As stated above, this Court may later recognize that under particular circumstances a criminal defendant's failure to object may not bar appellate review; for example, when the Supreme Court announces a decision establishing a "clear break" from the established procedure while the defendant's case is pending on appeal. In this case, however, the "new rule" announced in Cage v. Louisiana is an application of existing precedent to a new factual setting, and in such a situation we are not prepared to suspend the rule requiring contemporaneous objection.
Because this Court concludes that Cage represents an application of settled precedent to a particular fact situation and not a "clear break" with the past, we hold that Alabama law requiring a timely objection to the trial court's jury charges is not suspended. See A.R.Crim.P., Rule 21.1; see also Biddiev. State, 516 So.2d 846 (Ala. 1987); Steeley v. State,533 So.2d 665 (Ala. 1988), cert. denied, 490 U.S. 1026,109 S.Ct. 1759, 104 L.Ed.2d 195 (1989); Kyser v. State, 513 So.2d 68
(Ala.Crim.App. 1987); Holmes v. State, 497 So.2d 1149
(Ala.Crim.App. 1986). We hold that Beavers, by his failure to object at trial, is procedurally barred from raising the issue of whether *Page 1325 
the trial court properly instructed the jury on reasonable doubt.
In this case, however, even if Beavers had preserved an objection to the jury charge, we would have concluded that the jury instruction at issue did not conflict with the Cage v.Louisiana decision.
The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, and HOUSTON, JJ., concur.
[1] Vinzant v. State, 462 So.2d 1037 (Ala.Cr.App. 1984), apparently is cited for the proposition that review by the Court of Criminal Appeals is limited to matters properly raised in the trial court.
[2] We note that the issue regarding the jury instruction was raised in a supplemental brief filed in the Court of Criminal Appeals on February 28, 1991, one day before the Court of Criminal Appeals issued its opinion. Therefore, this issue was not raised for the first time on rehearing. However, this error does not affect our decision.